**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 24-4589**

---

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

    v.

DARRELL ALAN THOMPSON,

        Defendant – Appellant.

---

**No. 25-4036**

---

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

    v.

ANTONIO RASHEED HAIR,

        Defendant – Appellant.

---

Appeals from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Richard E. Myers II, Chief District Judge.  (5:24-cr-00042-M-RN-1; 5:24-cr-00042-M-RN-2)

---

Submitted:  May 20, 2026                    Decided:  July 28, 2026

---

Before KING and GREGORY, Circuit Judges, and FLOYD, Senior Circuit Judge.

---

Affirmed by unpublished per curiam opinion.

---

**ON BRIEF:** Kelly Margolis Dagger, ELLIS & WINTERS LLP, Raleigh, North Carolina, for Appellant Darrell Alan Thompson. Chiege O. Kalu Okwara, Charlotte, North Carolina, for Appellant Antonio Rasheed Hair. W. Ellis Boyle, United States Attorney, Lucy Partain Brown, Assistant United States Attorney, Jake D. Pugh, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In these consolidated appeals from the Eastern District of North Carolina, defendants Darrell Alan Thompson and Antonio Rasheed Hair (collectively, the "defendants"), challenge various aspects of the respective prison sentences imposed by the district court.  Underlying their sentences, in the Summer of 2024, the defendants each pleaded guilty to criminal offenses stemming from their participation in a conspiracy that involved breaking into United States Post Office blue collection boxes to steal checks. Those checks were then modified by the defendants and cashed into various accounts, totalling approximately $100,000 in losses to the victims of their scheme. As explained herein, we reject each of the defendants' appellate contentions and affirm their sentences.

I.

As background, in July 2024, Thomspon pleaded guilty — by way of a written plea agreement —  to one count of bank fraud conspiracy, in violation of 18 U.S.C. § 1344 (1) and (2), and to one count of possession of a firearm and ammunition as a convicted felon, in contravention of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).  The remaining counts against Thompson, as charged by the grand jury in the indictment, were otherwise dismissed. Meanwhile, in August 2024, Hair pleaded guilty "straight up" — i.e., without any plea agreement, *see, e.g.*, *United States v. Brewer*, 157 F.4th 332, 336 (4th Cir. 2025) (observing that "straight up" guilty plea means pleading guilty "without a plea agreement") — to five counts of bank fraud and aiding and abetting, in violation of 18 U.S.C. §§ 1344(1) and (2).

3

At Thompson's sentencing in October of 2024, the district court imposed on Thompson a mandatory minimum sentence of 180 months in prison, after the court had determined that Thompson had committed five separate and qualifying felonies, pursuant to the Armed Career Criminal Act (the "ACCA"). Meanwhile, Hair's sentencing was conducted in January of 2025, and the court — over Hair's objection — applied a two-level upward adjustment for Hair's role in the criminal conspiracy,[1] as well as a two-level upward adjustment because Hair's offense conduct involved the possession of a dangerous weapon.[2] On that basis, the court imposed on Hair a prison sentence of 51 months.

## II.

On appeal, the defendants raise a panoply of challenges related to the sentencing proceedings. For his part, Thompson primarily maintains that he received ineffective assistance of counsel at sentencing because: (1) his lawyer's "fail[ure] to object to the application of ACCA on the ground that Supreme Court authority and the plea agreement rendered it inapplicable to Thompson" was objectively unreasonable, *see* Br. of Appellants

---

[1] Guidelines section 3B1.1(a) authorizes a four-level upward adjustment if "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." *See* U.S.S.G. § 3B1.1(c). Meanwhile, section 3B1.1(b) supplies a three-level upward adjustment if the defendant was a "manager or supervisor" in criminal activity with five or more participants. Pertinent here, section 3B1.1(c) authorizes a two-level upward adjustment for an "organizer, leader, manager, or supervisor in any criminal activity other than described in subsection (a) or (b)."

[2] Guidelines section 2B1.1(b)(16)(B) provides for a two-level upward adjustment to a defendant's base offense level "[i]f the offense involved . . . possession of a dangerous weapon (including a firearm) in connection with the offense." U.S.S.G. § 2B1.1(b)(16)(B).

17; and (2) that "Section 2.i [of the written plea agreement] does not waive a defendant's rights under *Erlinger v. United Sates*, 602 U.S. 821 (2024)," *id.* at 24 (citation modified).[3]

Meanwhile, Hair maintains — as he did in the underlying proceedings — that the two-level upward adjustment under the Sentencing Guidelines for being an organizer, leader, or supervisor of criminal activity, *see* U.S.S.G. § 3B1.1(c), and the two-level upward adjustment under the Guidelines for possessing a dangerous weapon, *see* U.S.S.G. § 2B1.1(b)(16)(B), were each improperly applied to him. As to the former, Hair argues there "is simply no evidence in the record to support any finding that Hair was an organizer, leader, manager[,] or supervisor" in the conspiracy. *See* Br. of Appellants 36. And Hair asserts that "the [g]overnment did not establish the necessary temporal and spatial proximity linking the firearm to Hair and the fraudulent scheme," such that the district court erred in applying the two-level dangerous weapon upward adjustment. *Id.* at 53.

## A.

In this light, we review an ineffective assistance of counsel claim made on direct appeal — such as the one interposed by Thompson — under the de novo standard, and "we will reverse only if it conclusively appears in the trial record itself that the defendant was

---

[3] We observe that Thompson's appellate contentions regarding the purported ineffectiveness of his lawyer during the sentencing proceedings fall outside the scope of the appeal waiver in his written plea agreement. *See* J.A. 324 (specifying that "[t]he [d]efendant agrees . . . [t]o waive knowingly and expressly the right to appeal the conviction and whatever sentence is imposed on any ground, including any appeal pursuant to 18 U.S.C. § 3742 . . . *excepting* an appeal or motion based upon grounds of ineffective assistance of counsel or prosecutorial misconduct not known to the [d]efendant at the time of the [d]efendant's guilty plea" (emphasis added)). Furthermore, citations herein to "J.A ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.

not provided effective representation." *See United States v. Freeman*, 24 F.4th 320, 326 (4th Cir. 2022) (citation modified).  As to Hair's various sentencing-related contentions, we "review all sentences under a deferential abuse-of-discretion standard." *See Gall v. United States*, 552 U.S. 38, 41 (2007) (citation modified).  "[I]n assessing whether a sentencing court properly applied the Guidelines, 'we review the court's factual findings for clear error and its legal conclusions de novo.'" *See United States v. Dennings*, 922 F.3d 232, 235 (4th Cir. 2019) (quoting *United States v. Allen*, 446 F.3d 522, 527 (4th Cir. 2006)).

### B.

In these circumstances, having carefully assessed the record on appeal — as well as the various appellate submissions of the parties — we discern no reversible error. Accordingly, we are satisfied to reject the defendants' appellate contentions and affirm.

### 1.

Starting with Thompson's ineffective assistance of counsel claim, we are of opinion that the record on appeal does not "conclusively" show that Thompson's "counsel did not provide effective assistance." *See United States v. Galloway*, 749 F.3d 238, 241 (4th Cir. 2014).  Rather, it is likely that Thompson's lawyer at the sentencing in July of 2024 did not object to Thompson's designation under the ACCA because Thompson had waived his rights — as announced in the Supreme Court's 2024 *Erlinger* decision — to have a jury decide whether his five predicate convictions each occurred on "separate occasions."

Even if we agreed with Thompson that his lawyer made an error pertaining to the *Erlinger* precedent, Thompson fails to overcome the government's invocation of harmless error.  *See, e.g.*, *United States v. Brown*, 136 F.4th 87, 94 (4th Cir. 2025) (recognizing that

6

harmless error review applies to *Erlinger* errors). That is, Thompson had not three — but five — qualifying violent crimes that were each committed on separate days. As the government rightly contends, "it is inconceivable that Thompson would forego his plea agreement to challenge his ACCA status." *See* Br. of Appellee 23; *see Brown*, 136 F.4th at 99 ("[G]iven that the possibility of a favorable verdict on the 'different occasions' issue would have been so exceedingly remote as to be practically irrelevant, we cannot fathom that [the defendant] would have traded the benefit of pleading guilty for such long odds.").

2.

Turning to Hair's sentencing-related appellate contentions, we also discern no reversible error in that respect. Regarding Hair's contention that the sentencing court erred in applying a two-level upward adjustment for Hair's leadership in the conspiracy, there is no merit whatsoever to Hair's position. As our Court has long recognized, the upward adjustment set forth in Guidelines section 3B1.1(c) applies when a defendant directed the activities of codefendants, *see, e.g.*, *United States v. Bengali*, 11 F.3d 1207, 1212-13 (4th Cir. 1993), or when a defendant recruits participants into a criminal conspiracy, *see, e.g.*, *United States v. Jones*, 356 F.3d 529, 538 (4th Cir. 2004). And here, Hair did both — that is, Hair recruited approximately 10 other participants to act as so-called "money mules" for the criminal conspiracy, and Hair had those individuals deposit the stolen checks. *See, e.g.*, J.A. 247 (specifying that Hair had at least 10 "money mules operating for him"); *id.* at 451-52 (recognizing that Hair recruited "money mules" to deposit stolen checks).

Lastly, as to Hair's appellate contention that the district court erred by applying the two-level upward adjustment for the underlying offense conduct involving the possession

7

of a firearm, we also reject that contention as meritless.  To be sure, although Hair and his codefendant, Thompson, were each involved in a wide-ranging criminal conspiracy for mail and bank fraud, Hair sent multiple text messages and photos in which he offered to sell — and did, in fact, sell — Thompson a firearm.  *See, e.g.*, J.A. 237 (text message from Hair to Thompson:  "You gave me 36k in [checks] for that last pistol.  LOL.").  Because a firearm need only have "some purpose or effect" with the underlying offense conduct, we cannot say that the court abused its discretion in applying the two-level upward firearm adjustment as to Hair.  *See United States v. Jenkins*, 566 F.3d 160, 162 (4th Cir. 2009).

## III.

Pursuant to the foregoing, we are satisfied to reject each of the defendants' appellate contentions and affirm the district court.  Furthermore, we dispense with oral argument because the facts and legal contentions are adequately presented in the materials before our Court, and because an argument would not aid in the decisional process.

*AFFIRMED*

8